OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

August 11, 1999

William R. Archer III, M.D.
Commissioner of Health
Texas Department of Health
1100 W. 49th Street
Austin, Texas 78756-3199

Opinion No. JC-0093

Re: Constitutionality of section 501.024 of the Health and Safety Code, which requires manufacturers and distributors of hazardous substances to register annually with the Texas Department of Health and pay a fee of $150.00 (RQ-1221)

Dear Dr. Archer:

You have requested our opinion regarding the constitutionality of section 501.024 of the Texas Health and Safety Code, which requires manufacturers and distributors of hazardous substances to register annually with the Texas Department of Health and pay a fee of $150. We conclude that this provision is neither preempted by federal law nor contravenes the Commerce Clause of the United States Constitution.

Section 501.024 of the Health and Safety Code provides, in relevant part:

(a) A person who manufactures or repacks a hazardous substance that is distributed in this state or who distributes a hazardous substance in this state shall have on file with the department a registration statement as provided by this section.

(b) The board by rule shall prescribe the contents of the registration statement.

(c) The person must file the registration statement with the department before:

(1) beginning business in this state as a manufacturer, repacker, or distributor of a hazardous substance; and

(2) not later than September 1 of each year after the initial filing.

(d) The initial registration statement and each annual registration statement must be accompanied by a fee of $150.

The Toy Manufacturers of America ("TMA"), an organization of manufacturers of small balls, balloons, marbles, and other toys and games that contain small parts, contends that section 501.024 contravenes the Federal Constitution in two respects: 1) it is preempted by federal statute, specifically 15 U.S.C. § 1261, *et seq.*, and thus invalid under the Supremacy Clause; and 2) it is inconsistent with the Commerce Clause. We shall address these arguments in turn.

The Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. §§ 1261 - 1277 (1995), was initially enacted in 1960 and has been extensively amended. *See* Federal Hazardous Substances Act of 1960, Pub. L. No. 86-613, 74 Stat. 372 (1960). It provides in detail for the regulation of "hazardous substances" by the Federal Consumer Product Safety Commission with particular regard to labeling. The term "hazardous substance" is defined to include, *inter alia,*

> Any toy or other article intended for use by children which the Commission by regulation determines, in accordance with section 1262(e) of this title, presents an *electrical, mechanical,* or *thermal hazard.*

15 U.S.C. § 1261(f)(1)(D) (1995) (emphasis added). On the other hand, the Child Safety Protective Act ("CSPA"), *id.* § 1278, was enacted only in 1994, as another amendment to the FHSA. *See* Child Safety Protective Act of 1994, Pub. L. No. 103-267, 108 Stat. 722 (1994). The CSPA is addressed, not to children's toys or games that present an "electrical, mechanical, or thermal hazard," but to those that pose a "choking hazard." It imposes extensive labeling requirements for toys or games that constitute or contain small parts, balloons, small balls, or marbles, including labels warning that certain items are "not for children under 3 years."

The Texas Hazardous Substances Act ("THSA"), chapter 501 of the Health and Safety Code, was first enacted in 1971. Act of May 27, 1971, 62d Leg., R.S., ch. 1033, 1971 Tex. Gen. Laws 3372. It is clearly derived from the FHSA, and it defines "hazardous substance" with regard to toys in language virtually identical to that of the federal statute:

> a toy or other article, other than clothing, that is intended for use by a child and that presents an electrical, mechanical, or thermal hazard.

TEX. HEALTH & SAFETY CODE ANN. § 501.002(a)(2) (Vernon 1992). Texas has not, however, adopted a statute in any way equivalent to the CSPA. Thus, the registration and fee requirements of section 501.024—the subject of your inquiry—are applicable only to manufacturers and distributors of toys that pose electrical, mechanical, or thermal problems.

Article VI of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the

Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. As the Supreme Court said in *Cipollone v. Liggett Group*, 505 U.S. 504 (1992), since the 1819 decision in *M'Culloch v. Maryland*, 17 U.S. 316 (1819), "it has been settled that state law that conflicts with federal law is 'without effect.'" *Cipollone*, 505 U.S. at 516. Since, however, "the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress," preemption analysis begins with a determination of congressional intent. *Id.* As the Texas Supreme Court said in *Hyundai Motor Co. v. Alvarado*, 974 S.W.2d 1 (Tex. 1998):

> A state law is preempted and "without effect" if it conflicts with federal law. A federal law may expressly preempt state law. Additionally, preemption may be implied if the scope of the statute indicates that Congress intended federal law to occupy the field exclusively or when state law actually conflicts with federal law. A state law presents an actual conflict with federal law when "it is impossible for a private party to comply with both state and federal requirements" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Hyundai*, 974 S.W.2d at 4 (citations omitted); *see also* Tex. Att'y Gen. Op. Nos. JC-0052 (1999); JC-0007 (1999).

A letter submitted by the TMA contends that section 501.024 is preempted by both the CSPA and the FHSA. With respect to the former, it is clear that no preemption exists, because there is no preempting Texas statute. The THSA and the CSPA, as we have noted, impose entirely different labeling requirements. Texas has no statute requiring labeling of toys that present a "choking hazard." With regard to such items, federal law prevails in this state without challenge.

As to the FHSA, we must consider three kinds of preemption: (1) express; (2) conflict; and (3) occupation of the field. In enacting that statute, Congress specifically addressed the matter of preemption. The statutory notes accompanying the 1976 amendments to the FHSA provide:

> (b)(1)(A) Except as provided in paragraphs (2) and (3), if a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [subsec. 2(p) of this section or section 1262(b) of this title] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a *cautionary labeling requirement* applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under section 2(p) or 3(b) [subsec. (p) of this section or section 1262(b) of this title].

(B)  Except as provided in paragraphs (2), (3), and (4), if under regulations of the Commission promulgated under or for the enforcement of section 2(q) [subsec. (q) of this section] a requirement is established to protect against a risk of illness or injury associated with a hazardous substance, *no State or political subdivision of a State may establish or continue in effect a requirement applicable to such substance and designed to protect against the same risk of illness or injury* unless such requirement is identical to the requirement established under such regulations.

*See* Federal Hazardous Substances Act Amendments of 1976, § 17(a), Pub. L. No. 94-284, 90 Stat. 510 (statutory note addressing Effect Upon Federal and State Law) (emphasis added).  Paragraph (b)(1)(A) preempts only "cautionary labeling requirements," which section 501.024 clearly does not. The TMA argues that the registration and fee are requirements applicable to a hazardous substance and designed to protect against the same risk of illness or injury, and thus, that section 501.024 is preempted under paragraph (b)(1)(B).  But paragraph (b)(1)(B) applies only to "regulations of the Commission promulgated under 2(q) [subsec. (q) of this section]."

Subsection (q) relates to "banned hazardous substances," which it defines as

(A)  any toy, or other article intended for use by children, which is a  hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted;   or (B) any hazardous substance intended, or packaged in a form suitable, for use in the household, which the Commission by regulation classifies as a "banned hazardous substance" on the basis of a finding that, notwithstanding such cautionary labeling as is or may be required under this chapter for that substance, the degree or nature of the hazard involved in the presence or use of such substance in households is such that the objective of the protection of the public health and safety can be adequately served only by keeping such substance, when so intended or packaged, out of the channels of interstate commerce.

15 U.S.C. § 1261(q) (1995).  It is obvious that, if a hazardous substance is "banned" under section 1261, subsection (q), it cannot be deemed "a hazardous substance that is distributed in this state," and consequently, it is not a substance for which registration and payment of the fee is required.

Thus, federal law does not *expressly* preempt the registration and fee requirement of section 501.024 of the Health and Safety Code.  Neither is conflict preemption present: it is possible to fully comply with both federal and state law by, on the one hand, observing the federal labeling requirements and, on the other, registering in Texas and paying the annual fee.  Finally, the very

language of the federal statute indicates that Congress contemplated that states could legislate in this area, provided they complied with the mandated restrictions. Accordingly, it cannot plausibly be maintained that "Congress intended federal law to occupy the field."

A 1995 letter prepared by the Assistant General Counsel for Regulatory Affairs of the United States Consumer Product Safety Commission specifically considered whether section 501.024 of the Texas Health and Safety Code was preempted by the FHSA, and concluded that no preemption exists:

> We do not believe that these [registration] requirements would be considered "cautionary labeling requirements" under the FHSA preemption provision. The Texas law requires one to file a registration statement for a hazardous substance and to pay a fee. It does not require any registration information on the product's label. . . . Nor does it appear that the registration requirement would be preempted by section 18(b)(1)(B) of the FHSA. Section 2(q) authorizes the Commission to ban or otherwise restrict a hazardous substance. In contrast, the Texas law's registration provision seems to be an administrative mechanism to provide the state with information about firms manufacturing or distributing hazardous substances in the state and to charge a fee. The registration provision does not prescribe restrictions necessary to ensure the safety of a hazardous substance, as does section 2(q) of the FHSA. Based on the limited information you have provided, we do not believe that this registration requirement would address "the same risk" as any particular regulation under section 2(q).

Letter from Stephen Lemberg, Asst. Gen. Counsel for Regulatory Affairs, U.S. Consumer Product Safety Comm'n, to H. Allen Irish, Gov't Affairs Counsel, Nat'l Paint & Coatings Ass'n 2, 3 (Sept. 15, 1995) (on file with Opinion Committee). An agency's interpretation of a statute it is charged with implementing is entitled to considerable deference, provided it is reasonable and does not clearly conflict with the statute. *Chemical Manufacturers Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 150 (1985). In our opinion, this letter fully supports our conclusion that section 501.024 is neither expressly preempted by federal law nor an obstacle to enforcement of the federal statute. We conclude that section 501.024 is not preempted by the FHSA.

The TMA also suggests that the fee requirement of section 501.024 contravenes the Commerce Clause of the Federal Constitution. As the Supreme Court has frequently observed, the language of the Commerce Clause "contain[s] a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject." *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 179 (1995). Lump sum annual fees imposed by a state have been described by the Supreme Court as "flat taxes." *American Trucking Ass'n, Inc. v. Scheiner,* 483 U.S. 266, 271 (1987). The Court has held that a state tax

imposed on interstate commerce must, in order to be valid, pass a four-part test: the tax must be (1) applied to an activity with a substantial nexus to the taxing state; (2) fairly apportioned; (3) nondiscriminatory against interstate commerce; and (4) fairly related to the services provided by the state. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977). In *Scheiner*, the Supreme Court invalidated an annual "axle tax" imposed by the State of Pennsylvania on interstate trucks that used its highways.

Not all state taxes on interstate commerce, however, are subject to the test of *Brady*. The Supreme Court has drawn a distinction between "user fees" and general revenue taxes. "'User fees' are taxes or other fees collected by the state as reimbursement for use of state-owned or state-provided facilities or services." *Center for Auto Safety v. Athey*, 37 F.3d 139, 142 (4th Cir. 1994). Because user fees "are purportedly assessed to reimburse the State for costs incurred in providing specific quantifiable services," they are not true revenue measures and . . . the considerations applicable to ordinary tax measures do not apply." *Id.* at 142 (citing *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 621 n.12 (1981)).

In *Athey*, the Court of Appeals for the Fourth Circuit considered a challenge to a fee imposed by the State of Maryland on charitable organizations that solicited in the state. Relying on the Supreme Court's decision in *Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines*, 405 U.S. 707, 717-20 (1972), the Fourth Circuit said that, in order to pass constitutional muster under the Commerce Clause, a "user fee . . . must (1) reflect a fair, if imperfect, approximation of the cost of using state facilities for the taxpayer's benefit, (2) not discriminate against interstate commerce, and (3) not be excessive in relation to the costs incurred by the taxing authorities." *Athey*, 37 F.3d at 142. The court upheld the user fee on all three criteria. As to the first and third, "the Commerce Clause does not require that user fees be precisely correlated to actual use that a party makes of government services," but only that the "fee be based on a 'fair approximation of the costs of benefits supplied.'" *Id.* at 143. The court found that the purpose of the user fee was to monitor and administer charitable organizations. "[C]harities seeking to solicit in Maryland use the state's apparatus for regulating charities, and, as a result, derive a benefit, namely the privilege of soliciting in Maryland where donor confidence is enhanced owing to the state's regulation of charities." *Id.* at 143-44 (footnotes omitted). As to the second factor, the fee doesn't discriminate against out-of-state charities because all charities are required to pay the fee if they operate in Maryland. *Id.* at 143.

In our opinion, the registration and fee requirement of section 501.024 bears a closer resemblance to the kind of "user fee" considered in *Athey* than to the Pennsylvania axle tax struck down by the Supreme Court in *Scheiner*. As in *Athey*, a single fee is imposed only once per year per business entity (charity/toy manufacturer-distributor) rather than on every instrumentality of that entity (truck-axle/toy). As a result, the annual fee in both Maryland and Texas is modest compared to that assessed in Pennsylvania. Thus, we apply the "user fee" criteria to section 501.024.

Just as the charities in Maryland receive a benefit from state law, manufacturers of potentially hazardous toys likewise derive a benefit from the THSA. The Texas Board of Health is required to enact rules, TEX. HEALTH & SAFETY CODE ANN. § 501.025 (Vernon 1992), to regulate hazardous

toys in various ways such as determining flammability, *id.* § 501.021, and designating certain items as "banned hazardous substances," *id.* § 501.022. In addition, the Texas Department of Health is required to implement labeling standards, *id.* § 501.023; conduct examinations and investigations, *id.* § 501.031; inspect and copy records of manufacturers and distributors, *id.* § 501.032; and seize and dispose of banned or misbranded hazardous substances, *id.* § 501.033. As did the charitable organizations in *Athey,* toy manufacturers and distributors in Texas are accorded the privilege of doing business with consumer confidence enhanced by virtue of the state's regulation of hazardous toys. We think it is likely that such a plenitude of services is more than sufficient to offset a fee of $150 per year. Although resolution of this matter ultimately requires a factual determination that we cannot make in the opinion process, we believe that the Texas Board of Health may make such a finding. Likewise, section 501.024 does not discriminate against interstate commerce. It is applicable equally to anyone who distributes in Texas and to any manufacturer or repacker whose product is distributed in Texas. We conclude that, under the "user fee" test, section 501.024 of the Texas Health and Safety Code does not offend the Commerce Clause of the United States Constitution.

## S U M M A R Y

Section 501.024 of the Texas Health and Safety Code, which requires persons who distribute hazardous substances in Texas, and manufacturers and repackers whose hazardous substances are distributed in Texas, to register annually with the Texas Department of Health and pay a fee of $150.00, is neither preempted by federal law nor violative of the Commerce Clause of the United States Constitution.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee