AMERICAN CHARITIES FOR REASONABLE FUNDRAISING REGULATION, INC., the Creative Advantage, Inc., and Norman W. Leahy, Plaintiffs,

v.

PINELLAS COUNTY, a political subdivision of the State of Florida, Nugent Walsh, as Chairperson of the Charitable Solicitations Board of Pinellas County, and Sheryl Lord, as Director of Consumer Protection of Pinellas County, Defendants.

No. 97–2058–CIV–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 12, 1998.

Alison M. Steele, George Karl, Cynthia L. Hain, Rahdert, Anderson, McGowan & Steele, P.A., St. Petersburg, FL, Clifford Perlman, Seth Perlman, Perlman & Perlman, New York, NY, Geoffrey W. Peters, Law Office of Geoffry W. Peters, Vienna, VA, for American Charities for Reasonable Fundraising Regulation, Inc., the Creative Advantage, Inc., Norman W. Leahy, plaintiffs.

Carl E. Brody, Jr., Pinellas County Attorney's Office, Clearwater, FL, for Pinellas County, Nugent Walsh, Sheryl Lord, defendants.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This cause is before the Court on the following:

Dkt. 38 Motion for summary judgment by Plaintiffs, filed June 10, 1998.

Dkt. 39 Memorandum of law in support of Plaintiffs' motion for summary judgment, filed June 10, 1998.

Dkt. 40 Motion for summary judgment by Defendants, filed June 10, 1998.

Dkt. 44 Memorandum of law in support of Defendants' motion for summary judgment, filed June 12, 1998.

Dkt. 49 Memorandum of law in opposition to Plaintiffs' motion for summary judgment, filed June 23, 1998.

Dkt. 53 Memorandum of law in opposition to Plaintiffs' motion for summary judgment, filed June 24, 1998.

The cross motions for summary judgment require this Court to determine whether Pinellas County Ordinance, section 42–266, *et seq.*, Pinellas County Code, regulating the solicitation of charitable contributions, is constitutional. The Court finds that based on the constitutional arguments raised herein, the provisions within Pinellas County Ordinance 42–266, *et seq.*, are constitutional. As to any other constitutional arguments not raised herein, the Court expresses no opinion.

## FACTS

The following represent the relevant facts of this case for the purpose of resolving the pending motions.

1. On December 7, 1993, Defendant, Pinellas County (the "County"), enacted ordi-

nance No. 93–106 (the "Ordinance"). The Charitable Solicitations Ordinance is codified as Article VII, Pinellas County Code at sections 42–266, *et seq.* The purpose of the Ordinance is to require registration and public disclosure of persons who solicit charitable contributions within the County. The Ordinance seeks to make the information available to the public in order to prevent fraud or misrepresentation in the solicitation and use of contributions. The County's jurisdiction under the ordinance embraces the territory within the legal boundaries of the County.

To comply with the Ordinance's provisions, persons who wish to solicit funds in the County must register with the County, file a sworn application with the required information, pay an application fee, maintain specified records, comply with reporting requirements, and refrain from engaging in fraud or conduct that constitutes a prohibitive act. The Ordinance also places a 30–day time period for granting or denying permits and provides specific procedures governing the denial, suspension, or revocation of a permit.

2. On August 25, 1997, Plaintiffs, American Charities for Reasonable Fundraising Regulation, Inc. (ACFRFR), The Creative Advantage, Inc. (TCA), and Norman W. Leahy (Leahy) (collectively, "Plaintiffs"), brought suit in this Court to enjoin the County from enforcing the Ordinance and seeking a declaratory judgment finding the Ordinance unconstitutional.

3. Plaintiff ACFRFR is a Delaware corporation having its principle place of business in the District of Columbia and is a tax-exempt organization under the Internal Revenue Code. ACFRFR maintains that it appears in this lawsuit as the assignee of a claim and in its representational capacity of various supporters who engage in professional fundraising. Specifically, ACFRFR institutes legal action on behalf of these entities to challenge charitable solicitation laws.

4. Plaintiff TCA maintains that it is a Virginia corporation having its principle place of business in Virginia. TCA describes itself as a direct mail fundraising agency that consults with nonprofit organizations concerning direct mail campaigns.

5. Plaintiff Leahy is an individual who resides in Virginia. He describes himself as a copyrighter who plans to use his copyrighting skills by providing direct mail fundraising letters and public education letters to charities.

6. All Plaintiffs allege that they maintain no presence in the County, solicit no contributions, or otherwise maintain any contacts, within the County that would subject them to the County's jurisdiction.

7. Defendant, Pinellas County, is a Chartered County of the State of Florida pursuant to Article VIII of the Florida Constitution. Section 496.421, Florida Statutes, gives the County the specific authority to pass laws regulating charitable solicitation.

8. Defendant, Nugent Walsh, is the Chairperson of a volunteer board created pursuant to section 42–273, Pinellas County Code. Section 42–274 gives the Chairperson the authority to enforce the provisions of the Ordinance.

9. Defendant, Sheryl Lord, is the Director of Consumer Protection of Pinellas County and a Code Enforcement Officer under the Ordinance. The Ordinance vests Lord with the responsibility to grant or renew charitable solicitation permits, as well as the authority to issue citations for violation of the Ordinance.

10. Chapter 496, Florida Statutes, also regulates the solicitation of charitable contributions within the State of Florida. The purpose and intent behind Florida's charitable solicitation laws is similar to that behind the Ordinance.

11. Professional fundraisers who are required to register with the State of Florida are also required to register with the County. Applicants seeking a permit with the County must register with the State of Florida prior to submitting the County application. Section 42–292(b)(8) requires applicants to show proof of compliance with the State of Florida requirements by attaching a copy of the registration or exemption statement issued by the Florida Division of Consumer Protection. Both Florida and the County charge a variable fee for initial and renewal permits.

12. On April 15, 1997, the President of TCA, Marilyn Price, sent a letter to the Pinellas County Department of Consumer Protection requesting an interpretation of whether TCA must register with the County. TCA's letter explained that it carried on no activity in the County and entered into no contracts with any entity located in the County. On April 25, 1997, Mr. John Wood of the Department of Consumer Protection telephoned Ms. Price in response to her letter. Plaintiff alleges that Mr. Wood advised her that both the charity and its fundraising consultant must register with the County if the charity raises funds in the County.

13. On April 21, 1997, Plaintiff Leahy sent a letter to the County's Department of Consumer Protection to inquire whether he was required to register. On May 16, 1997, Department of Consumer Protection Investigator Susan Tootle sent a reply letter to Leahy and advised him that Professional Fundraising Consultants must register with the County.

14. On August 25, 1997, Plaintiffs filed suit, (Dkt.1), in this Court and attacked the Ordinance's constitutionality, alleging the following causes of action:

1. Violation of the Commerce Clause: Lack of Nexus.

2. Violation of the Commerce Clause: Undue Burden on Interstate Commerce.

3. First Amendment: Facial Challenge.

4. First Amendment: As Applied Challenge.

5. First Amendment: Undue Burden on First Amendment Rights.

6. Fourteenth Amendment: Violation of Due Process

15. On June 10, 1998, after engaging in minimal discovery, Plaintiffs filed a Motion for Summary Judgment and supporting memorandum of law. (Dkt.38, 39).

16. On June 19, 1998, Defendants filed their own Motion for Summary Judgment and supporting memorandum of law, alleging that the Ordinance is facially constitutional under the Commerce Clause, the Fourteenth Amendment Due Process Clause, and the First Amendment. (Dkt.40, 44).

## PRELIMINARY MATTERS: NOTICES OF ADOPTION

■ The County has filed Notices of Adoption (Dkt.43, 55) to adopt in toto the Memorandum of Amici Curiae Hubert H. Humphrey III, Minnesota Attorney General, as well as to adopt the defendant's motion for summary judgment and supporting memorandum of law filed in *American Target Advertising v. Giani*, 23 F.Supp.2d 1303 (D.Utah 1998). Plaintiffs opposed the County's Notice of Adoption or in the alternative asked to adopt the corresponding plaintiff's memorandums filed in the *Giani* case. (Dkt.50).

Although the Court recognizes that the *Giani* case in Utah presents similar arguments as those argued by the parties here, the facts relevant to this case alone control the summary judgment motions before this Court. The Court notes that Defendants and Plaintiffs both requested leave to file briefs in excess of forty pages, (Dkt.36, 41), more than twice the maximum length set by Local Rule 3.01(c). The Court granted both motions in Orders dated June 6, 1998 and June 12, 1998. Therefore, the Court finds that Defendants had ample room to incorporate any arguments raised in the *Giani* case into their own brief. Moreover, Local Rule 3.01(b) specifically provides that "[n]o other briefs of legal memoranda directed to an such written motion shall be filed or served by any party unless requested by the Court." This Court has not requested the briefs from the *Giani* case. Therefore, in enforcing the Middle District's Local Rules, the Court will not consider these additional briefs and legal memoranda in reaching its decision.

## STANDARD FOR REVIEW ON SUMMARY JUDGMENT

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must state the basis for its motion and must identify the portions of the record that show the absence of a genuine issue of material

fact. The burden can be discharged by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party meets its burden, the nonmoving party must go beyond the pleadings and designate specific facts in affidavits, or in the depositions, answers to interrogatories, and admissions, if any, that show a genuine issue of material fact. *See id.* at 324, 106 S.Ct. 2548.

Issues of material fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505.

In determining whether a material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All reasonable doubts and all justifiable inferences are resolved in favor of the nonmoving party. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993).

Although factual disputes preclude summary judgment, the "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper but required. *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981).

Because this case involves largely a facial challenge of the Ordinance's constitutionality, this case is ripe for summary judgment.

### ISSUES

Plaintiffs have asserted that the Ordinance violates Article 1, § 8; the Due Process Clause of the Fourteenth Amendment; and the First Amendment of the United States Constitution. Specifically, Plaintiffs assert the following arguments for our consideration:

1. Commerce Clause: Direct Regulation of Wholly Interstate Commerce.

2. Commerce Clause: Ordinance Requires Prior Approval Before Engaging in Interstate Commerce.

3. Commerce Clause: Ordinance Would Stifle Free Flow of Commerce if Enacted by other Localities.

4. Commerce Clause: Insufficient Nexus.

5. Commerce Clause: Undue Burden on Interstate Commerce: *Pike.*

6. Due Process Clause: Insufficient Minimum Contacts.

7. First Amendment: Overly Broad.

8. First Amendment: Void for Vagueness.

9. First Amendment: Prior Restraint on Speech.

10. First Amendment: Unbridled Government Discretion.

11. First Amendment: Content Based Regulation of Speech.

12. First Amendment: Ordinance Does not Serve a Compelling Interest.

13. First Amendment: Ordinance is not Narrowly Tailored.

In response, Defendants filed their own motion for summary judgment, alleging that the Ordinance is facially constitutional under the Commerce Clause, the Fourteenth Amendment's Due Process Clause, and the First Amendment. The Court agrees with Defendants and turns now to a discussion of each issue.

### DISCUSSION

### A. THE COMMERCE CLAUSE

The United States Constitution provides that Congress has the power to regulate commerce "among the several States." U.S. Const. Art. 1, § 8, cl. 3. This grant serves two distinct purposes. First, it gives Congress the affirmative authority to enact legislation that affects interstate commerce. *See Quill Corp. v. North Dakota,* 504 U.S. 298, 309, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (citing *Gibbons v. Ogden,* 22 U.S. 1, 9 Wheat.

1, 31–32, 39, 6 L.Ed. 23 (1824)). Second, it acts as a negative sweep, typically referred to as the "dormant" Commerce Clause, by prohibiting State regulations that unduly burden interstate commerce. *See id.* The Commerce Clause, however, does not automatically invalidate all state restrictions on commerce. *See Kassel v. Consolidated Freightway Corp. of Del.,* 450 U.S. 662, 668, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981). Indeed, it is well settled that absent conflicting federal law, states retain the authority to regulate matters of legitimate local concern which in some way may affect or even regulate interstate commerce. *See id.* at 669, 101 S.Ct. 1309; *Southern Pac. Co. v. Arizona,* 325 U.S. 761, 767, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).

■ Generally, a law may be found unconstitutional under the Commerce Clause in either of two situations: 1) where the law *directly* regulates or discriminates against interstate commerce taking place wholly outside its borders, *see, e.g., Healy v. Beer Inst.,* 491 U.S. 324, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989); *Brown–Forman Distilleries v. New York State Liquor Auth.,* 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986); *Edgar v. Mite Corp.,* 457 U.S. 624, 643, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), or 2) where the regulation operates in an evenhanded, nondiscriminatory manner to effectuate a legitimate local public interest, "and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

**1. *Direct Regulation of Interstate Commerce***

Plaintiffs assert that the Ordinance is automatically unconstitutional under the "direct regulation" test because they contend that the Ordinance directly regulates professional fundraising activities taking place wholly outside the borders of Pinellas County. Plaintiffs argue that the Ordinance is analogous to the direct regulation laws found unconstitutional in *Healy,* 491 U.S. at 336, 109 S.Ct. 2491 and *Brown–Forman,* 476 U.S. at 582, 106 S.Ct. 2080. Alleging that the Ordinance constitutes a direct regulation of interstate

commerce, Plaintiffs contend that it should be automatically stricken as a *per se* violation of the Commerce Clause.

■ The Court, however, disagrees and finds that the Ordinance does not constitute a direct regulation of interstate commerce taking place wholly outside the borders of the County. The Ordinance only applies when a charitable organization or professional fundraiser "solicit[s] contributions *in the county* ...." Pinellas County Code Section 42–291(a) (1985) (emphasis added). Thus, if a charity, professional fundraising consultant, or professional solicitor does not solicit contributions "in the county," the Ordinance does not require them to register. *See id.* Charities and professional fundraisers are therefore free to solicit in other jurisdictions without the need to register with the County. Accordingly, the Court finds that unlike the unconstitutional laws at issue in the cases cited by Plaintiffs, the Ordinance here does not directly regulate the commerce of professional fundraisers "taking place wholly outside of the [County's] borders." *Healy,* 491 U.S. at 336, 109 S.Ct. 2491. Because the Ordinance does not "directly regulate" commerce, the Court concludes that the Ordinance does not commit a *per se* violation of the Commerce Clause.

**2. *Indirect Regulation of Interstate Commerce: Pike***

■ In *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), the Supreme Court set forth the appropriate balancing test to be applied to laws that regulate evenhandedly, imposing only an incidental burden on interstate commerce. This dormant Commerce Clause test provides that where the state statute or local ordinance at issue "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, [the regulation] will be upheld *unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.*" *Id.* at 142, 90 S.Ct. 844 (emphasis added).

Plaintiffs agree that the Ordinance's stated purpose, to "prevent deception, fraud, or misrepresentation in the solicitation, use and

reporting of contributions", section 42–270, constitutes a legitimate state interest. In addition, Plaintiffs do not contest the fact that the Ordinance regulates evenhandedly, applying equally to in-state and out-of-state professional fundraisers. Nevertheless, Plaintiff maintains that the Ordinance does not pass the *Pike* balancing test for several reasons.

First, Plaintiffs argue that the Ordinance fails the *Pike* test because the Ordinance is not rationally related to the prevention of fraud. Clearly Plaintiffs are mistaken. As an integral part of the Ordinance's purpose to prevent deception, fraud, and misrepresentation in the solicitation of contributions, the Ordinance requires potential charitable fundraisers to obtain a permit and disclose certain fundamental information. Section 42–292.

Section 42–292 requires applicants to disclose information such as: the applicant's name and any aliases; business information and type of business organization; whether the applicant has been convicted of theft, fraud, misrepresentation, or any other violation of a solicitation law, and if so, when and where; whether the applicant has had a previous permit denied, suspended or revoked; the applicant's date of birth, mailing address, street address, and driver's license number or the federal employer's identification number of any businesses; a copy of the registration or exemption statement issued by the State of Florida under Chapter 496, Florida Statute; and a copy of the applicants tax returns for the preceding year. *See* section 42–292(b)(1)–(9).

The application also requires information pertaining to the charitable organization, including the purpose of the work and the manner in which it is to be performed. *See id.* section 42–292(11). Finally, the application requires information regarding each activity of solicitation, including the name of the solicitation; the manner and method of solicitation; the contemplated receipts; the proportion of the contribution which will go toward the object of the solicitation; the plan to distribute contributions; and copies of the wording of verbal and written solicitations. *See id.* section 42–292(12)(a)–(g).

The Court finds that obtaining this information and requiring professional fundraisers to obtain a permit prior to soliciting charitable donations in the County is rationally related to the Ordinance's purpose. The Supreme Court has recognized that requiring professional fundraisers to obtain a license before soliciting is rationally related to the protection of the public and the charities themselves. *See Riley v. National Federation of the Blind of N.C,* 487 U.S. 781, 814, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). The County has legitimate reasons to believe that professional solicitors carry with them a real danger of defrauding the public, thereby allowing the County to require and examine applications before turning solicitors loose on the public. *See id.* Indeed, the *Riley* Court recognized that

> The modern state owes and attempts to perform a duty to protect the public from those who seek for one purpose or another to obtain its money. When one does so through the practice of a calling, the state may have an interest in shielding the public against the untrustworthy, the incompetent, or the irresponsible, or against unauthorized representation of agency. A usual method of performing this function is through a licensing system.

*Id.* (quoting *Thomas v. Collins,* 323 U.S. 516, 545, 65 S.Ct. 315, 89 L.Ed. 430 (1945)) (concurring opinion).

Plaintiffs' second argument asserts that the burden on professional fundraisers is "clearly excessive" to the local putative benefits. Plaintiffs' main contention here posits that *if* other local jurisdictions instituted similar ordinances, the costs, both financially and administratively, would severely outweigh the County's legitimate local interest. The Court disagrees.

The Supreme Court has stated that the "interest in protecting [the public] from fraud is, of course, a sufficiently substantial interest to justify a narrowly tailored regulation." *Riley v. National Federation of the Blind of N.C., Inc.,* 487 U.S. 781, 792, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *see also Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (recognizing the

legitimate public interest of preventing fraud by charitable solicitation). In addition, this Court specifically recognizes that the population of Pinellas County is particularly vulnerable to fraudulent solicitors. Recent census statistics reveal that more than 25% of the County's population is over the age of 65. *See* 1997 Florida Statistical Abstract 27 (Susan S. Floyd & Eve M. Irwin eds., 31st ed.1997). In 1996, the census estimated that 221,143 residents were over age 65 at. *See id.* Based on this census information, few other Florida counties come close to the number of senior citizens that reside in Pinellas County. *See id.* The evidence also indicates that the County's residents utilize the information in making charitable donation decisions. In 1997, for example, the Department of Consumer Protection received almost 500 inquiries relating to charities. (Dkt. 46, Aff. of Larry C. Kirk). Consequently, the Court concludes that this Ordinance gives a substantial benefit to this County to the extent that any burden imposed on professional fundraisers by the Ordinance falls far short of the "clearly excessive" threshold.

The Court also finds that Plaintiffs, who bear the burden of proof, have not come forth with any relevant evidence that the burden on professional fundraisers is "clearly excessive" to this benefit. Instead, Plaintiffs merely hypothesize about the burden they may incur *if* other localities enact a similar ordinance. This type of guesswork, however, is mere speculation and serves only to cloud the precise issue before the Court. To reiterate, the issue under the *Pike* balancing test is only whether the burden on interstate commerce is "clearly excessive" in relation to the local benefits of *this* Ordinance. *See Pike*, 397 U.S. at 142, 90 S.Ct. 844. Because Plaintiffs have come forth with no relevant evidence to outweigh the substantial local benefit obtained by this Ordinance, the Court finds that Plaintiffs have failed to satisfy their burden. *See Dorrance v. McCarthy*, 957 F.2d 761, 763 (10th Cir.1992) (holding the person challenging the ordinance has the burden to show that the burden on interstate commerce is excessive compared to the local benefit). Accordingly, in light of our benefit versus burden analysis above, the Court concludes that the Ordinance is constitutional under the *Pike* balancing test.

### 3. *Sufficient Nexus with Interstate Commerce*

Analogizing the fee required under the Ordinance as the functional equivalent of a tax, Plaintiffs argue that in order for the County to tax Plaintiffs, there must be a nexus between the state and the person, property, or transaction it seeks to regulate. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 311, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992); *National Bellas Hess, Inc. v. Department of Revenue of the State of Ill.*, 386 U.S. 753, 756, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), *overruled by Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). In *Quill*, the Court struck down a North Dakota use tax imposed on a mail order company where the only contact the company had with the state was by U.S. mail and common carrier. *See id.* at 758–59, 87 S.Ct. 1389. The Court found that tax violated the Commerce Clause because the business did not have a "substantial nexus" with the State. *See id.* Because Plaintiffs assert that they have no contacts whatsoever with the County, they contend that the County's imposition of this "tax" violates the Commerce Clause. *See id.* at 760, 87 S.Ct. 1389.

The Court, however, finds that the fee imposed under the Ordinance constitutes a valid user fee and not a tax. Accordingly, the more stringent "substantial nexus" standard for revenue taxes does not apply. Taxes are imposed on interstate commerce to raise revenue. *See Center for Auto Safety, Inc. v. Athey*, 37 F.3d 139, 142 (4th Cir.1994). The Supreme Court has imposed a stricter standard on state revenue taxes to insure that states do not discriminate against interstate commerce by favoring local businesses. *See id.* (citing *American Trucking Ass'ns v. Scheiner*, 483 U.S. 266, 269, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987)). As Plaintiffs point out, part of this more stringent standard requires the activity to have a "substantial nexus" with the taxing State. *See id.* (citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977)). User fees, however, are not subject

to the more stringent standard " '[b]ecause [user fees] are purportedly assessed to reimburse the State for costs incurred in providing specific quantifiable services,' they 'are not true revenue measures and ... the considerations applicable to ordinary tax measures do not apply.' " Id. (quoting *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 622 n. 12, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981)).

The Supreme Court has identified three factors to determine whether the Ordinance qualifies as a user fee. *See Evansville–Vanderburgh Airport Auth. Dist. v. Delta Airlines*, 405 U.S. 707, 717–20, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972). The Ordinance must: 1) reflect a fair, if imperfect, approximation of the costs associated with administration of the Ordinance, 2) not discriminate against interstate commerce, and 3) not be excessive in relation to the costs incurred by the County. *See id.* If the Ordinance satisfies these three criteria, the Ordinance survives constitutional attack under the Commerce Clause as a qualified user fee. *See id.*

The Court finds that the Ordinance facially satisfies all three elements. First, there is no evidence that the fee is anything but a fair approximation of the costs associated with administering the Ordinance. In fact, Defendants have noted that the fee does not "provide either the County or the department with a profit." (Dkt. 44 at 19). Second, the Ordinance does not discriminate against interstate commerce because, as noted earlier, the Ordinance and fee requirement applies to both instate and out-of-state professional fundraisers. Third, the Court finds no evidence that the fees collected through registration exceeded the costs the County incurs in administering and enforcing the Ordinance. Accordingly, the Court finds the sliding scale fee imposed by the County to be a constitutional user fee under the Commerce Clause.

The Court adds that an almost identical licensing fee was upheld as constitutional in *Athey*, 37 F.3d 139. The sliding scale fee in *Athey* was structured as follows:

| Level of Public Contributions | | Annual Fee |
|---|---|---|
| At least $25,000 but less than | $ 50,001 | $ 50 |
| At least $50,001 but less than | $ 75,001 | $ 75 |
| At least $75,001 but less than | $100,001 | $100 |
| $100,001 and above | | $200 |

Id. at 141. Here, the Ordinance's analogous fee schedule provides that if contributions were:

Less than $25,000—fee is $20.

$25,000 or more, but less than $100,00—fee is $60.

$100,000 or more, but less than $200,000—fee is $90

$200,000 or more—fee is $120.

(Dkt.44, Ex. 10.) Finding no material difference between the two fee schedules, the Court agrees with the *Athey* court, which held that the "Statute's sliding scale fee system meets the *Evansville–Vanderburgh* test for user fees. It is, therefore, a user fee that does not violate the Commerce Clause." *Id.* at 144. Consequently, Plaintiffs' motion for summary judgment on this issue is denied.

### 4. *Unduly Burdensome on Free Flow of Commerce*

■ Plaintiffs cite a variety of Supreme Court cases for the proposition that the Commerce Clause forbids regulation which, if enacted by other local jurisdictions, would stifle the free flow of commerce in a "welter of complicated obligations to local jurisdictions." *National Bellas Hess*, 386 U.S. at 759, 87 S.Ct. 1389; *Healy v. Beer Inst.*, 491 U.S. 324, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989) (noting that the practical effect of a statute must be evaluated by considering "if not one, but many or every[ ] State adopted similar legislation"); *Brown–Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 583, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986) (stating that the proliferation of state affirmation laws has "greatly multiplied the

likelihood that a seller will be subjected to inconsistent obligations in different States"). Based on these broad assertions of law, Plaintiffs assert that the Ordinance here violates the Commerce Clause because if every other local jurisdiction enacted a similar ordinance, professional fundraising activity would be stifled in a "welter of complicated obligations." (Dkt. 39 at 9).

The Court finds, however, that the propositions cited by these Supreme Court cases are easily distinguishable from the case at bar. In each case, Plaintiffs have overlooked the critical fact that the statute in these cases violated the Commerce Clause because of the statute's extraterritorial effect on interstate commerce. This omission on Plaintiffs' part is fatal to their argument.

Unlike the Ordinance, which does not regulate professional fundraisers beyond the boundaries of the County, the laws struck down in the Supreme Court cases, supra, had a direct effect on commerce occurring wholly outside the state. In *Healy*, the Court struck down a Connecticut statute which "require[d] *only* that *out-of-state* shippers affirm their prices are no higher than the prices being charged in the border States as of the moment of affirmation." 491 U.S. at 335, 109 S.Ct. 2491 (emphasis added). The Clause "protects against inconsistent legislation arising from the *projection* of one state regulatory regime into the jurisdiction of another State." *Id.* at 337, 109 S.Ct. 2491 (emphasis added). Similarly, the Court in *Brown–Forman* struck down a New York law, which provided that once a distiller posted liquor prices in New York, the distiller was not free to change the prices elsewhere in the United States during that month. *See* 476 U.S. at 582, 106 S.Ct. 2080. The Court held that New York had " 'project[ed] its legislation' into other States, and directly regulated commerce therein . . . ." *Id.* at 584, 106 S.Ct. 2080.; *see also National Bellas Hess,* 386 U.S. at 759, 87 S.Ct. 1389 (finding an Illinois statute that imposed a tax on a mail-order firm unconstitutional where the firm had insufficient contacts with Illinois).

The County's Ordinance here does not suffer this unconstitutional flaw. Simply put, because the County's Ordinance only regulates charities and their fundraising counsel that solicit *within* the County; section 42–270, the County does not directly regulate commerce by "projecting its legislation" into other jurisdictions. The Court's finding here merely reiterates its earlier finding that the Ordinance does not directly regulate commerce taking place wholly outside the County.

■ Moreover, Defendants correctly point out that the Commerce Clause "protects the interstate market, not the particular interstate firms, from prohibitive or burdensome regulation." *Exxon Corp. v. Governor of Md.,* 437 U.S. 117, 127, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); *Executive Town & Country Servs., Inc. v. City of Atlanta,* 789 F.2d 1523, 1526 (11th Cir.1986). The mere structure or methods of operation in a market do not fall within the protection of the Commerce Clause. *See Exxon,* 437 U.S. at 127, 98 S.Ct. 2207; *Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). Thus, even if Plaintiffs choose to withdraw from a market burdened by regulation, there is no reason to believe that their share of the market will not be quickly replaced by other firms willing to comply with the regulations. *See Exxon,* 437 U.S. at 127, 98 S.Ct. 2207.

■ The Court also finds unpersuasive Plaintiffs' additional concerns that the Ordinance results in a loss of the free-flow of charitable information to the residents of the County. Indeed, the Supreme Court ruled out a similar argument on the grounds that this argument relates to the wisdom of the Ordinance, and not on the burden on commerce. *See Exxon,* 437 U.S. at 127, 98 S.Ct. 2207. Questioning the wisdom of this Ordinance, however, may also require Plaintiffs to question the wisdom of Florida's legislature, which specifically codified the County's authority to enact more stringent regulations on charitable solicitation. *See* Fla. Stat. Ann. § 496.421 (1995). Plaintiffs have alleged no quarrel with § 496.241, and we therefore express no opinion as to its wisdom or constitutionality. In so far as this Ordinance is concerned, however, the Court finds that the County has enacted an Ordinance that falls within the specific authority granted it by statute. Accordingly, Plaintiffs motion on this issue is denied.

### 5. Prior Approval Before Engaging in Interstate Commerce

■■■ The "Commerce Clause dictates that no State may force an out-of-state merchant to seek regulatory approval before undertaking a transaction in another." *Healy v. Beer Institute*, 491 U.S. 324, 337, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989) (citing *Brown–Forman*, 476 U.S. at 582, 106 S.Ct. 2080). Plaintiffs contend that the charity is ultimately responsible for where the solicitation is directed, and therefore the charity-client may later decide to solicit in the County without the professional fundraiser's knowledge. Plaintiff TCA contends that if it performs services for a charitable client in California, it has no notice of where that client will ultimately decide to solicit. Thus, to avoid violating the Ordinance, TCA would have to register with the County in case the California client decides to solicit in the County. This, Plaintiffs assert, requires them to seek regulatory approval with the County prior to engaging in commerce with another state. A brief review of the Ordinance, however, indicates that Plaintiffs argument is without merit.

The Ordinance does not require fundraising agencies to register if their charitable client does not solicit in the County. *See* Section 42–291(a). If a professional fundraiser contracts with a charity that does not solicit in the County, then neither the professional fundraiser nor the charity are required to register. *See id.* However, if a charity decides to solicit in the County, then the charity must complete an application and obtain a permit prior to soliciting. *See id.* The application requires the charity to disclose any agreement it has with a fundraising agency. *See* section 42–292(6). If information provided by the charity changes, the charity must provide the code enforcement officer with the changed information within fifteen days. *See* section 42–295(b)(4).

Moreover, the Ordinance prohibits any charity from contracting with any professional solicitor for the purpose of raising or soliciting funds for the charity before the fundraising agency has been issued a charitable permit. *See* section 42–321(c). Therefore, the professional fundraiser would not have to register with the County until the client charity ultimately decides to solicit in the County. At that point, the charity would have to notify the professional fundraiser to register in order for the charity to comply with the Ordinance. *See* section 42–295(b)(4). Requiring the professional fundraiser to register at the point where the agency is involved in interstate as well as intrastate commerce is well within the guidelines of the Commerce Clause. *See Eli Lilly & Co. v. Sav–On Drugs*, 366 U.S. 276, 279, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961) (citing *Railway Express Agency v. Virginia*, 282 U.S. 440, 51 S.Ct. 201, 75 L.Ed. 450 (1931)).

Having addressed the various Commerce Clause arguments asserted by Plaintiffs, the Court concludes that the Ordinance facially satisfies the Commerce Clause. Accordingly, Plaintiffs' Motion for Summary Judgment alleging that the Ordinance is facially unconstitutional on Commerce Clause grounds is denied and Defendants' Motion is granted.

### B. DUE PROCESS

Generally, personal jurisdiction is established if the person over which jurisdiction is sought has established certain "minimum contacts," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), or if the person has "purposely directed" its activities at the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *see also Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Relying primarily on these landmark Supreme Court cases governing personal jurisdiction, Plaintiffs argue that the Due Process clause prohibits the County from regulating their conduct because: 1) they have no contacts with the County, and 2) they have not purposely directed fundraising activity into the County. Accordingly, Plaintiffs assert that this Court should find that the County's assertion of jurisdiction over them violates the Due Process clause of the Fourteenth Amendment.

■■■ The Court finds, however, that Plaintiffs' assertion of lack of personal jurisdiction is not proper at this time. Simply stated, the issue of whether or not the Plain-

tiffs should be subject to the County's jurisdiction is simply premature because the County has not sought to enforce the Ordinance on the Plaintiffs. Only if and when the County seeks to bring the Plaintiffs into court as defendants can this Court properly determine, based on the precise facts at that time, whether the Plaintiffs have subjected themselves to the County's jurisdiction. Of course, if Plaintiffs at that juncture still feel that jurisdiction is lacking, they are certainly free to contest jurisdiction. *See* Fed.R.Civ.P. 12(b)(2).

The Court also disagrees with Plaintiffs' assertion that even if Plaintiff's advice is "used in solicitations mailed into Pinellas County[,] this is insufficient to confer jurisdiction on Pinellas County to Regulate the conduct of the Plaintiffs in this case." (Dkt. 39 at 15). This Court has noted that Constitutional Due Process allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit. *See Interfase Mktg., Inc. v. Pioneer Techs. Group, Inc.,* 774 F.Supp. 1355, 1357 (M.D.Fla.1991) (citing *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559). Without question, this "fair notice" concern is satisfied and specific jurisdiction over out-of-state defendants is established if the defendant has "purposely directed" his activities at the residents of the forum. *See Burger King,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Despite these considerations, the constitutional touchstone remains whether the defendant purposely established "minimum contacts" in the forum State. *See International Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

Although Plaintiffs couch their argument in terms of "advice," the Ordinance here only requires a permit where the fundraising agency, be it a charitable organization, a professional fundraising consultant, or a professional solicitor, "*solicit[s]* contributions in the county ...." Section 42–291 (emphasis added). Thus, it is the overt act of solicitation, and not mere "advice," that triggers the need to obtain a permit. Indeed, the Court recognizes that the act of solicitation is what has the potential to cause the greatest harm since the solicitation is the vehicle by which the unscrupulous solicitor seeks to defraud the public.

Moreover, those who engage in solicitation of the public, either for themselves or as agents for another entity, are clearly expecting some benefit in the form of donations from the public. If the professional fundraiser receives such a benefit from the residents of the County, it's only fair that they be subject to legal action in Florida courts as well. *See Interfase Mktg.,* 774 F.Supp. 1355 at 1358 (finding that similar contacts satisfied Due Process). Thus, if professional fundraisers purposefully engage in or contribute to the solicitation of funds in the County, the fundraiser cannot then claim that their "conduct and connection with the forum State are such that [they] should [not] reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. 286, 297, 100 S.Ct. 559 (1980).

Although it is premature to decide Plaintiffs due process challenge as applied, the Court does conclude that the Ordinance facially complies with the Fourteenth Amendment's Due Process clause. The Ordinance provides that it is enforced pursuant to section 1–8, Pinellas County Code. *See* section 42–268. Section 1–8 authorizes the Board of County Commissioners to seek injunctive relief in state court. If the County elects to take action, the County must first give thirty days notice. *See* Fla. Sta. Ann. §§ 125.69(2)(a), 162.06 (West 1998). Then if the County seeks to enjoin a nonresident, there must be: 1) sufficient jurisdictional facts to come within Florida's long-arm statute, § 48.193(1), (2), Florida Statutes; and 2) the requisite "minimum contacts" to satisfy the Fourteenth Amendment. *See Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.,* 896 F.Supp. 1190, 1192 (M.D.Fla.1995) (citing *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990); *Cable/Home Comm. Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855 (11th Cir.1990)).

Because enforcement of the Ordinance by the County on nonresidents would trigger this procedure, the Court finds that the Ordinance facially complies with the Due Process Clause of the Fourteenth Amendment. Accordingly, Plaintiffs' Motion for Summary

Judgment finding the Ordinance unconstitutional under the Due Process Clause of the Fourteenth Amendment is denied and Defendants' Motion is granted.

## C. FIRST AMENDMENT

### 1. Constitutionality under the First Amendment

A trilogy of fairly recent Supreme Court cases has firmly established in our constitutional jurisprudence that charitable solicitation activities involve speech protected by the First Amendment. *See Riley v. National Federation of the Blind of North Carolina, Inc.,* 487 U.S. 781, 788, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *Secretary of State of Maryland v. Joseph H. Munson, Inc.,* 467 U.S. 947, 959–60, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632–33, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). As Justice Blackmun noted in *Munson,* the Supreme Court has determined that "charitable solicitations are so intertwined with speech that they are entitled to protection under the First Amendment." 467 U.S. at 959, 104 S.Ct. 2839.

It is also clear that this protection extends to professional solicitors: "a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Riley,* 487 U.S. at 801, 108 S.Ct. 2667. Accordingly, any requirement that requires professional solicitors to obtain a license is subject to First Amendment scrutiny. *See id.* Thus, although the solicitation of financial support is "undoubtedly subject to reasonable regulation," *Schaumburg,* 444 U.S. at 632, 100 S.Ct. 826, the state has the burden of satisfying a two-prong test to survive constitutional attack: the County must show that the Ordinance 1) serves a substantial government interest, and 2) is "narrowly drawn" to serve that interest "without unnecessarily interfering with First Amendment Freedoms." *Id.* at 637, 100 S.Ct. 826; *see also Riley,* 487 U.S. at 792, 108 S.Ct. 2667; *Munson,* 467 U.S. at 961, 104 S.Ct. 2839.

The Court rejects at this juncture Plaintiffs' call for more exacting strict scrutiny under a theory that the Ordinance involves "content based" regulation of speech. Plaintiffs' assertion, which cites no case law in support, centers on the specious argument that regulation of "charitable" solicitation speech, as opposed to other forms of solicitation speech, constitutes a content-based regulation of core speech. The Court disagrees for several reasons.

First, our Supreme Court cases teach us that charitable speech makes up a *"variety* of speech interests," *Riley,* 487 U.S. at 788, 108 S.Ct. 2667 (emphasis added), including the "communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes ...." *Schaumburg,* 444 U.S. at 632, 100 S.Ct. 826. Thus, it is clear that the Court has viewed charitable speech as a sort of potpourri of various types of speech. Because charitable speech is meshed in such a way that it is "inextricably intertwined" with various component parts of speech, the Supreme Court has determined that the test set forth above is the proper constitutional test for fully protected speech. *See Riley,* 487 U.S. at 796, 108 S.Ct. 2667.

Second, the Court finds that the Ordinance does not involve a content-based review of the charitable solicitation material. *See, e.g., Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). In fact, the Ordinance does not preempt any particular type of speech. On the contrary, absent violating some other law, speakers are free to communicate whatever message they wish and the Ordinance imposes no additional restrictions on the type of message the speaker may communicate. Accordingly, this Court finds that the two-prong test set forth above is the appropriate standard by which the Ordinance's facial constitutionality under the First Amendment will be scrutinized.

### a. Substantial Interest

According to the Supreme Court, the County's interest will satisfy the "substantial interest" prong if the County enacted the Ordinance to " 'protect[ ] the public from fraud, crime, and undue annoyance.' " *Schaumburg,* 444 U.S. at 636, 100 S.Ct. 826;

*see also Riley,* 487 U.S. at 792, 108 S.Ct. 2667 (holding that "[t]he interest in protecting charities (and the public) from fraud is, of course, a sufficiently substantial interest to justify a narrowly tailored regulation").

The stated purpose of the Ordinance is to make registration information available to the public in order "to prevent deception, fraud, or misrepresentation in the solicitation, use and reporting of contributions." Section 42–270. Because the Ordinance's purpose falls squarely within the interests contemplated by the Supreme Court, this Court concludes that the Ordinance satisfies the "substantial interest" prong.

### b. Narrowly Tailored

To determine whether the Ordinance satisfies the second prong, the Ordinance need not constitute the "least restrictive means" of accomplishing the County's interest. *See Munson,* 467 U.S. at 961, 104 S.Ct. 2839. Rather, the Ordinance is narrowly tailored if it is "designed to serve the interest without unnecessarily interfering with First Amendment freedoms" *Munson,* 467 U.S. at 961, 104 S.Ct. 2839 (quoting *Schaumburg,* 444 U.S. at 637, 100 S.Ct. 826); see also *Ward v. Rock against Racism,* 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (stating that narrowly tailored is satisfied if the statute "promotes a substantial government interest that would be achieved less effectively absent the regulation"). The Court finds that the various provisions of the Ordinance are sufficiently narrowly tailored to satisfy First Amendment scrutiny.

### Application, Registration, and Disclosure Requirements:

Initially, the Ordinance requires charities, professional fundraising consultants, and professional solicitors to provide the Pinellas County Department of Consumer Protection with information about the fundraising agency and its relationship, if applicable, with any other fundraising agency or charity. Section 42–292. The permit application requires information, such as basic identifying information, 42–292(b)(1); prior criminal activity relating to theft, fraud, or misrepresentation in the solicitation of funds, 42–292(b)(3); proof of registration or exemption from the state of Florida, 42–292(b)(8); a copy of the applicable Internal Revenue Service form filed for

the preceding year, 42–292(b)(9); information about the charity, 42–292(b)(11), as well as information regarding each activity involving solicitation, 42–292(b)(12). The Court finds these registration and disclosure provisions on their face to be narrowly drawn to achieve the substantial public interest of preventing fraud. *See Church of Scientology Flag Svc. Org., Inc. v. City of Clearwater,* 2 F.3d 1514, 1548 (identifying similar disclosure requirements as narrowly tailored); *Gospel Missions of Am. v. Bennett,* 951 F.Supp. 1429, 1450 (C.D.Cal.1997) (stating "disclosure requirements that specifically relate to the planned charitable solicitation are constitutional").

### Reporting Requirements:

The Ordinance's reporting requirements are also narrowly tailored. The Ordinance's record keeping and reporting requirements set forth in section 42–295 are narrowly drafted to verify the information obtained in the applications and to keep the Department and public informed of the manner in which collected funds are distributed. *See Gospel Missions,* 951 F.Supp. at 1444. Therefore, these provisions are narrowly drawn to "assist in preventing fraud by informing the public of the ways in which their contributions will be employed." *Schaumburg,* 444 U.S. at 638, 100 S.Ct. 826; *see also Dayton Area Visually Impaired Persons v. Fisher,* 70 F.3d 1474, 1485 (6th Cir.1995).

### Fee Structure:

Finally, the Court finds that the Ordinance's fee provision is also narrowly tailored. The courts have held that "fees that serve not as revenue taxes, but rather as means to meet the expenses incident to the administration of a regulation and to the maintenance of public order in the matter are constitutionally permissible." *National Awareness Found. v. Abrams,* 50 F.3d 1159, 1165 (2d Cir.1995) (citing *Murdock v. Pennsylvania,* 319 U.S. 105, 113–14, 63 S.Ct. 870, 87 L.Ed. 1292 (1943)).

■ Section 42–292(c) of the Ordinance provides for an application fee to be set by resolution of the board of county commissioners. "Calculation of the appropriate fee shall be determined by adding the total of direct

public support and indirect public support as reported on the organization's Internal Revenue Service Form." *Id.* This sliding scale fee, which ranges from $20 to $120 depending on the amount of contributions, has been held to be constitutional as means to defray the cost of administration and enforcement of the Ordinance. *Cox v. New Hampshire,* 312 U.S. 569, 577, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

The courts have found that a sliding scale fee is constitutionally sound because of the expense associated with monitoring charities relative to size and public contribution. *Center for Auto Safety v. Athey,* 37 F.3d 139, 143 (4th Cir.1994). Finding no evidence that the fee imposed here differs in any substantial respect from that in *Athey,* and finding no evidence that the fee serves in any other way other than to defray the expenses associated with administering and enforcing the Ordinance, the Court concludes that the Ordinance's fee structure is narrowly tailored.

Having concluded that the Ordinance's provisions are narrowly tailored, and recognizing the substantial interest the County has in protecting Pinellas County residents from fraud, the Court holds that the Ordinance survives constitutional scrutiny under the First Amendment. Accordingly, Plaintiffs' Motion as to this issue is denied and Defendants' Motion is granted. The Court now turns to the remainder of Plaintiffs' First Amendment arguments, which the Court also finds unpersuasive.

### 2. *Overbreadth*

Plaintiffs allege that the Ordinance is overly broad because it does not serve the County's interest without unnecessarily interfering with First Amendment freedoms. This, however, is not the appropriate standard for an overbreadth challenge. The Court has already determined that the Ordinance is narrowly tailored, despite the availability of more conventional law enforcement measures to fight fraud. Suffice it to say that all states have such alternatives, but the courts have never held that a local jurisdiction lacks the power to regulate charitable solicitation. *See, e.g., Schaumburg,* 444 U.S. at 620, 100 S.Ct. 826; *Hynes v. Mayor and Council of Borough of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Church of Scientology Flag Service Org., Inc. v. City of*

*Clearwater,* 2 F.3d 1514 (11th Cir.1993); *National Foundation v. City of Fort Worth,* 415 F.2d 41, 45 (5th Cir.1969).

■■■ The proper standard for an overbreadth challenge focuses on the precision of the law. A statute is over broad and void on its face if it "does not aim specifically at the evils within the allowable area of [government] control, but sweeps within its ambit other activities that constitute an exercise" of protected rights. *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

■■■ Testing the constitutionality of this Ordinance, however, is to some degree "fundamentally at odds with the function of the federal court," which should resolve concrete cases and controversies. *Younger v. Harris,* 401 U.S. 37, 52, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Application of the overbreadth doctrine is manifestly strong medicine, and the Court is reluctant to resort to that doctrine. *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Thus, the overbreadth doctrine will not apply unless the protected acts affected by the statute are substantial when compared with the law's legitimate applications to unprotected acts, even when the acts in question are pure speech. *See New York v. Ferber,* 458 U.S. 747, 770–71, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

■■■ After reviewing the Ordinance on its face, the Court does not find that the Ordinance sweeps beyond its legitimate application. As noted earlier, the Ordinance's provisions are sufficiently precise and narrowly drafted to accomplish its legitimate purposes. Moreover, section 42–266 of the Ordinance defines words, terms, and phrases such that the danger of "substantial" overbreadth does not patently exist. Consequently, Plaintiffs' overbreadth claim is denied.

### 3. *Void for Vagueness*

Vagueness is concerned with the clarity of a law. A law must be drawn with sufficient clarity so that people of ordinary intelligence know the conduct they must take to avoid the sanction of the particular law. A law "is unconstitutionally vague if 'people of common

intelligence must necessarily guess at its meaning and differ as to its interpretation.'" *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). This standard, however, "is not one of wholly consistent academic definitions of abstract terms. It is, rather, the practical criterion of fair notice to those to whom the statute is directed." *American Comm. Assoc. v. Douds,* 339 U.S. 382, 412, 70 S.Ct. 674, 94 L.Ed. 925 (1950).

 To support its vagueness challenge, Plaintiffs assert that section 42–321(c) of the Ordinance does not require professional fundraising consultants, as opposed to professional solicitors, to register with the County before entering into contracts with client charities. The Court, however, finds no vagueness or ambiguity in this provision, especially in light of the fact that professional fundraising consultants and professional solicitors are sufficiently defined in section 42–266 of the Ordinance.

In addition, Plaintiffs' assertion that the Ordinance is vague because preparation of a mailing campaign falls under both the definition of consultant and solicitor is also unfounded. The Court finds that the definition of "professional solicitor" sufficiently alleviates any vagueness or ambiguities of which Plaintiffs complain. The last sentence in the definition of professional solicitor provides that "[a]ny person, corporation, association or other organization which places advertising, prepares a mailing campaign, or otherwise sends materials to the public for the purpose of soliciting funds by charitable organization or a sponsor, *shall be considered a professional solicitor and not a professional fundraising consultant.*" Section 42–266 (emphasis added). Thus, the Ordinance gives "fair notice" that those who engage in the overt act of soliciting funds from the public by engaging in any of the above activities are professional solicitors and not consultants within the meaning of the Ordinance. Accordingly, because the Ordinance does not suffer from vagueness, the Court denies Plaintiffs' Motion on this issue.

### 4. *Unconstitutionally Burdensome*

 Plaintiffs allege here, as they did under the Commerce Clause, that the Ordinance is unduly burdensome because it overlaps Florida's charitable solicitation registration requirements. In addition, Plaintiffs again posit the argument that if every other local jurisdiction enacted a similar ordinance, the regulations on charitable speech would halt. The Plaintiffs apparently recognized the redundancy of such an argument by noting that "if such multiplicity of regulation violates Plaintiffs' rights under the Commerce Clause, the same multiplicity violates their First Amendment rights." (Dkt. 39 at 27 n. 97).

This Court has adequately addressed Plaintiffs concerns of overburden under the Commerce Clause analysis and found Plaintiffs' argument unpersuasive. Thus, using Plaintiffs' words, finding no multiplicity under the Commerce Clause, the Court finds no multiplicity in violation of the First Amendment.

 The County also correctly points out that localities are well within their power to regulate charitable solicitation within their territorial boundaries. *See, e.g., National Foundation v. City of Fort Worth,* 415 F.2d 41, 45 (5th Cir.1969); *Gospel Missions of America v. Bennett,* 951 F.Supp. 1429, 1440 (C.D.Cal.1997) (citing *Cantwell v. Connecticut,* 310 U.S. 296, 306, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)). Moreover, the County here has simply enacted an Ordinance specifically authorized by statute. *See* Fla. Stat. Ann. § 496.421 (West 1998). This statute plainly gives the County the authority to enact more stringent regulations on charitable solicitation. *See id.* Thus, as the Court noted under the analogous Commerce Clause analysis, Plaintiffs' argument might be better directed at the wisdom of § 496.421, and not the County's decision to act upon it. *See Exxon Corp. v. Governor of Md.,* 437 U.S. 117, 127, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978). Plaintiffs' motion for summary judgment on overburden grounds is therefore denied.

### 5. *Prior Restraint on Speech*

The Supreme Court has recognized two dangers inherent in prior restraints: 1) a failure to place time limits on the government decision maker issuing the license; and 2) unbridled discretion within the government official or agency making the licensing

decision. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 226, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Because this Court finds the Supreme Court's opinion in *FW/PBS* controlling, the Court will rely on its guidance in addressing each danger in turn.

### a. Time Limits on Government Decisionmaker

Licensing schemes create a danger of indefinitely suppressing constitutionally protected speech. *See id.* A licensing scheme "that fails to set reasonable time limits on the Decisionmaker creates the risk of indefinitely suppressing permissible speech." *Id.* at 227, 110 S.Ct. 596. In *Freedman v. Maryland,* 380 U.S. 51, 58–60, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the Court provided three safeguards that must be met by a movie content censorship board: 1) the restraint on speech prior to judicial review must be for a specific brief period; 2) prompt judicial review of the board's decision must be available; and 3) the censorship board bears the burden of seeking judicial review in order to suppress the speech.

In *FW/PBS,* however, the Court recognized that a scheme that does not involve content censorship need not comply with all three of the safeguards required in *Freedman. See* 493 U.S. at 228, 110 S.Ct. 596. Instead, a non-censorship licensing scheme must only satisfy the first two safeguards to be constitutional: 1) "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained"; and 2) there must be the "possibility of prompt judicial review in the event that license is erroneously denied." *Id.* (citing *Freedman,* 380 U.S. at 51, 85 S.Ct. 734). By omitting the third safeguard, the Court refused to impose the burden of seeking judicial review on the decisionmaker in non-censorship licensing schemes. *See id.* at 230, 110 S.Ct. 596. The Supreme Court justified the exclusion of the third safeguard on several grounds.

First, in a direct censorship of speech, the decisionmaker bears the burden of seeking judicial review because such regulation is presumptively invalid under our First Amendment jurisprudence. *See id.* at 229, 110 S.Ct. 596. An ordinance or licensing scheme that merely performs the ministerial function of passing on the qualifications of an applicant, however, is not presumptively invalid because it does not pass judgment on the content of any speech. *See id.* Second, the *FW/PBS* Court pointed out that the license is critical to the applicant's entire business, and therefore the applicant, and not the licensing authority, has the incentive to seek judicial review. *See id.* at 229–30, 110 S.Ct. 596. Because of these differences, the First Amendment does not place the burden of seeking judicial review of a licensing denial on the licensing authority. *See id.* at 230, 110 S.Ct. 596. The Court finds, as it did earlier, that the Ordinance here is a non-censorship type licensing scheme and is therefore subject only to the two-prong safeguard test. The Ordinance clearly satisfies both safeguards.

The Ordinance specifically provides that "[t]he code enforcement officer shall grant a new or renewal charitable solicitations permit within 30 days from the date of its proper filing." Section 42–293(a)(1). Moreover, the decision to issue the license is not subject to any other entity's approval, and thus it does not run the risk of delaying approval beyond the 30–day time period. *See FW/PBS,* 493 U.S. at 227, 110 S.Ct. 596 (finding an ordinance subject to health department, fire department, and building official inspection could not ensure the applicant that approval would be made within the 30 day limit). Accordingly, the Court finds the Ordinance's 30–day time period within which approval must be made sufficiently reasonable to satisfy the first safeguard.

The Ordinance also satisfies the "possibility of prompt judicial review" safeguard. Indeed, Plaintiffs do not contend that judicial review is lacking. Plaintiffs merely contend that the Ordinance unconstitutionally places the burden of seeking judicial review on the applicant. As discussed above, however, this argument is without merit in light of the Supreme Court's precedent in *FW/PBS. See* 493 U.S. at 230, 110 S.Ct. 596 (holding that "the First Amendment does not require that the city bear the burden of going to court to effect the denial of a license application or

that it bear the burden of proof once in court").

Nevertheless, the Court finds that sections 42–293 and 42–278 of the Ordinance provide for prompt judicial review if a permit is denied. Pursuant to the Ordinance, the code enforcement officer shall give notice of an intent to deny within 30–days from its filing. Section 42–293(a)(2). The director of consumer protection shall send notice of denial on any of the five grounds for denial, or for failure to correct within 30 days any of the deficiencies noted in the notice of intent to deny. Section 42–293(a)(3). An applicant who has received a notice of denial may request a hearing before the charitable solicitations board. Section 42–293(a)(4). Finally, the decision by the board "may be reviewed as a matter of right by the circuit court upon the filing of an appropriate pleading by an aggrieved party." Section 42–278. Given these provisions, the Court finds that the Ordinance satisfies the safeguard of prompt judicial review. Accordingly, having satisfied both safeguards, the Court concludes that the Ordinance does not commit an impermissible prior restraint. *See FW/PBS,* 493 U.S. at 226, 110 S.Ct. 596. Plaintiffs' motion for summary judgment on this issue is denied.

### b. Unbridled Discretion

■■■ The second "evil" of a prior restraint on speech is "unbridled discretion in the hands of the government official or agency." *Id.* at 225, 110 S.Ct. 596. With respect to an ordinance, it is well established that:

> an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (quoting *Staub v. City of Baxley,* 355 U.S. 313, 322, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958)).

The Ordinance here does not confer "unbridled discretion" in the official who grants or denies permits. The Ordinance provides that the Director of the Pinellas County Department of Consumer Protection *shall* deny a permit in only five specific situations:

> (1) An applicant has been convicted of a violation of F.S. ch. 496, this article, or any other federal, state or local ordinance, act or law governing theft, fraud, misrepresentation, or the solicitation of funds within three years of the latest application.

> (2) An applicant has had a registration issued under F.S. ch. 496 or a permit issued under this article denied or revoked within three years of the latest application.

> (3) A applicant has had a registration issued under F.S. ch. 496 or a permit issued under this article suspended twice within two years prior to the pending application.

> (4) An applicant has submitted an application which contains material false information.

> (5) An applicant has submitted an application which omits material information.

Section 42–293(c)(1)–(5). If there is no basis for denial, the permit shall be granted. *Id.* section 42–293(b).

In addition to the limited circumstances under which the Director *must* deny a permit, the Director "*may* deny ... the charitable solicitations permit of any person for any violation of this article." Section 42–276(e) (emphasis added). Although the Director's discretion here is more broad, it is still sufficiently limited to the specific provisions within in the Ordinance. Moreover, any decision by the Director is further limited by administrative review by the charitable solicitations board. *See* section 42–277. The board's decision may also be reviewed as a matter of right in circuit court. *See id.* section 42–278.

Given the limited circumstances under which the Director must or may deny a license, and because of the opportunity for prompt and adequate administrative and judicial review of that decision, the Court concludes that the Director's discretion is actually quite narrow. Thus, because the Ordinance does not create "unbridled discretion" in the hands of the official who grants or denies the permits, the Court finds that the Ordinance does not create an unconstitutional prior restraint. Consequently, the Court denies Plaintiffs' Motion

for Summary Judgment on this final First Amendment issue. Accordingly, it is

**ORDERED** that Plaintiffs' Motion for Summary Judgment (Dkt.38) be **DENIED;** it is further

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt.40) on the Facial constitutionality of the Ordinance under Article 1, § 8; the Due Process Clause of the Fourteenth Amendment; and the First Amendment of the United States Constitution be **GRANTED.** The Clerk of the Court shall enter a final judgment for Defendants.